### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRITTANI PERRY,                         :
                                        :
            Plaintiff,       :   CIVIL ACTION
                                        :
      vs.                               :
                                        :
DRIVEHERE.COM, INC., <u>ET</u>. <u>AL</u>.     :
                                        :
            Defendants.      :   NO. 11-CV-2429
                                        :
                                        :
                                        :
                                        :

### <u>MEMORANDUM AND ORDER</u>

**JOYNER, C.J.**                              **July 27, 2011**


     Presently pending before this Court is the Motion for
Dismissal of Plaintiff's Amended Complaint filed by the
Defendants, DriveHere.com, Inc., Peoples Commerce, Inc., and
FixCreditPlus.com (Doc. No. 18) pursuant to Fed. R. Civ. P.
12(b)(6).  For the reasons outlined in the following paragraphs,
the Motion is denied.

### <u>I. BACKGROUND</u>

     According to the allegations of the Amended Complaint,[1]
Plaintiff, Brittani Perry, entered into a Lease agreement with
Peoples Commerce, Inc. to lease a 1999 Buick Regal on November

-----

     [1]  Jurisdiction arises under 15 U.S.C. § 1679, 15 U.S.C. § 1667 and §
1640, and 28 U.S.C. § 1331, with supplemental jurisdiction over the state law
claim arising under 28 U.S.C. § 1367.

21, 2009.  Plaintiff alleges that Defendants DriveHere.com and Peoples Commerce are in the business of selling and/or leasing older high mileage automobiles to consumers at inflated prices. (Amended Complaint, ¶ 1).  As part of the sale/lease transaction, Defendants frequently enroll consumers in their credit repair service, operated under the name FixCreditPlus.com.  The purpose of this service is to improve and repair a consumer's credit record.  Defendant DriveHere.com advertises on its website that it "specializes in establishing or reestablishing our client's credit . . . We help with any bad credit entry with the credit bureau for you."  (Amended Complaint, ¶s 2 - 3).

Plaintiff's lease terms called for 154 weekly payments of $65.00, totaling $10,075.00 and $974.99 due at signing, which included the first weekly payment of $65.00.  In addition to the car lease, Plaintiff entered into a separate agreement with FixCreditPlus.com to help repair her credit.  Plaintiff signed a limited Power of Attorney with FixCredit.com to allow the company to complete this service.  The lease and delivery of the vehicle, the financing of the lease, and the credit repair were all entered into on the same day, at the same location, and were all part of one transaction.

On June 24, 2010, Plaintiff returned the leased vehicle and terminated the lease because the car had mechanical issues.  Even though Plaintiff terminated the lease, Defendant reported to the

2

credit bureaus that the car was repossessed.

Plaintiff initiated this lawsuit alleging violations of the Federal Credit Repair Organization Act, 15 U.S.C. §1679, *et. seq.* (Count I), Pennsylvania's Credit Services Act, 73 P.S. §2181 *et. seq.*, (Count II), the Federal Consumer Leasing Act, 15 U.S.C. §1667 (Count III), and a breach of fiduciary duty (Count IV, mislabeled as second Count III). Plaintiff is seeking to recover actual and punitive damages, attorney's fees and costs, and such other relief as this Court deems appropriate. Defendants move to dismiss these claims on the grounds that Plaintiff has failed to state a claim upon which relief may be granted pursuant to Fed. R. Civ P. 12(b)(6).

## II. STANDARD OF REVIEW

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under this Rule, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868, 883 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940 (2007)). Although detailed factual allegations are not required, a complaint that "tenders 'naked assertion[s]' devoid of 'further

factual enhancement"' is not sufficient.  Id. (citing Twombly, 550 U.S. at 555).

Federal Rule of Civil Procedure 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  In Iqbal, the Supreme Court outlined a two-part analysis that district courts must conduct when reviewing a complaint challenged under Rule 12(b)(6). Flower v. UPMC Shadyside, 578 F. 3d 203, 210-11 (3rd Cir. 2009). The district court must first separate the "factual and legal elements of a claim" and "accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions." Id. (quoting Iqbal, 129 S. Ct. at 1949).  Second, the district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. (quoting Iqbal, 129 S. Ct. at 1950).

### III. DISCUSSION

#### 1. Federal Credit Repair Organization Act - Count I

The Credit Repair Organization Act (CROA) was enacted in 1996 in response to the trend of "credit repair" companies to use deceitful practices to take advantage of debtors looking to

improve their credit scores.  <u>Federal Trade Commission v. Gill</u>, 265 F.3d 944, 947 (9th Cir. 2001).  The purpose of the statute was to "ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make informed decisions regarding the purchase of such services" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."  15 U.S.C. §1679(b)(1), (2).

The CROA defines a "credit repair organization" as

[A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of–

(i) improving any consumer's credit record, credit history, or credit rating; or

(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i);

15 U.S.C §1679a(3).

Plaintiff alleges that Defendants are credit repair organizations under §1679a because they use the mail or other instruments of interstate commerce to sell, provide or perform (or represent that they sell, provide or perform) services for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating in return for the payment of money or other valuable consideration.  (Amended

5

Complaint, ¶ 51).  Plaintiff therefore alleges that Defendants
violated the CROA by failing to comply with all its requirements.
(Amended Complaint, ¶ 52).

By this motion to dismiss, Defendants first contend that
DriveHere.com is neither a party to either the Motor Vehicle
Lease Agreement or the Contract for Services and that the Amended
Complaint is devoid of any factual allegations as to why
DriveHere.com should be a party to this lawsuit.  In addition,
Defendants allege that FixCreditPlus.com is not a credit repair
organization because it did not receive "payment of money or
other valuable consideration" from Plaintiff for its services.
Therefore, Defendants argue that Count I of the Amended Complaint
must be dismissed.  Because we find that Plaintiff alleges
sufficient facts to overcome a motion to dismiss, we deny the
motion for dismissal of Count I.

For one, Plaintiff alleges that during the course of and as
part of her dealings and transaction with DriveHere.com and
Peoples Commerce, to whom she paid money, she was enrolled in a
credit repair service operated by Defendants under the name
FixCreditPlus.com.  (Amended Complaint, ¶ 27).  DriveHere.com
advertises on its website that it "specializes in establishing or
re-establishing our client's credit ... We help with any bad
credit entry with the credit bureau for you."  (Amended
Complaint, ¶ 28).  DriveHere.com further represents that it has a

"Proactive team of experts that helps each and every customer attain the credit score they deserve." (Amended Complaint, ¶ 29). Plaintiff further alleges that Defendants promised to improve and repair her credit history, record, and/or her credit rating by contacting the credit bureaus to dispute the information contained in Perry's credit reports. (Amended Complaint, ¶ 32). Plaintiff even signed a power of attorney with FixCreditPlus.com to allow them to provide this service. (Amended Complaint, ¶ 33). Plaintiff further avers that the lease and delivery of the vehicle, the financing of the lease, and the credit repair were accomplished on the same day at the same physical location in Plymouth Meeting, Pennsylvania, and were part of one transaction. (Amended Complaint, ¶ 34). In addition, there are allegations in the amended complaint that all three Defendants received consideration in connection with the lease transaction with Plaintiff, which included the credit repair. (Amended Complaint, ¶ 35). Although the contract itself states a total payment of $0 in return for these services, Plaintiff alleges that the Defendants each received valuable consideration in connection with the lease transaction, which included the promised credit repair. In view of these averments, we do not find the zero amount on the contract to be dispositive. Indeed, it is possible that it is a false statement regarding the fees received or it could be referring to the amount the

7

Plaintiff was required to pay, but would not exclude the possibility of receipt of "other valuable consideration."  In any event, this is an issue that can be explored through discovery.

At the motion to dismiss stage of litigation, this Court must take all well-pleaded facts as true and draw inferences in favor of Plaintiff.  <u>Flower v. UPMC Shadyside</u>, 578 F. 3d at 210-11.  Thus, in light of this standard, the Court finds that FixCreditPlus.com is a credit organization within the meaning of the CROA and thus Plaintiff is allowed to pursue her claim.

Furthermore, Plaintiff may allege CROA violations against all defendants.  While only FixCreditPlus.com is actually performing the credit repair services advertised, Plaintiff alleges that all defendants are connected to the CROA violations. Plaintiff alleges that during the course of and as part of her dealings and transaction with DriveHere.com and Peoples Commerce, she was enrolled in a credit repair service operated by Defendants under the name FixCreditPlus.com and that DriveHere.com advertises on its website that it specializes in repairing credit.  Again, at this stage of the litigation, we confine our inquiry to the pleadings.  In so doing, we find that Plaintiff has alleged sufficient facts to claim that each Defendant violated the CROA.  <u>See</u>, <u>Hanrahan v. Britt</u>, No. 94-4615, 1995 U.S. Dist LEXIS 9745 at *8 (E.D. Pa. July 12, 1995) (holding that plaintiffs could bring claims against all

defendants since plaintiffs had alleged that the unlawful conduct "was carried out by and through defendants' business organizations, which organizations are comprised of and include defendants individually, the various corporations and entities through which defendants conduct their respective businesses, and the employees, agents and representatives of defendants' respective business organizations").

### 2. Pennsylvania's Credit Services Act- Count II

Pennsylvania's Credit Services Act ("CSA") was passed to "police the interactions between credit services organizations, retail sellers, and buyers, and to prevent false representation and misleading advertising aimed at potential debtors." Morilus v. Countrywide Home Loans, Inc., No. 07-900, 2007 U.S. Dist LEXIS 44943, at *5 (E.D. Pa. June 20, 2007). The CSA regulates the activities of credit services organizations. Sherzer v. Homestar Mortg. Servs., No. 07-5040, 2010 U.S. Dist. LEXIS 137315, at *9 (E.D. Pa. June 20, 2007).

Plaintiff alleges that Defendants' joint and several conduct set forth above violated the CSA.  (Amended Complaint, ¶ 52). Although Defendants' Motion to Dismiss requests that Plaintiff's entire Amended Complaint be dismissed, Defendants make no specific arguments as to why Count II should be dismissed. Defendants simply allege generally that Plaintiff fails to state a claim upon which relief can be granted.  Defendants argue that

9

Plaintiff's Amended Complaint consists of "conclusory allegations of law and unsupported conclusions which are not sufficient to state a claim" and that Plaintiff falsely claims that the credit repair service was part of the lease agreement.

Contrary to Defendant's claim, Plaintiff has alleged sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). Plaintiff alleges that Defendants failed to provide a written contract detailing the services to be provided and the other information relating to its credit repair services as required under 73 P.S. § 2186, that Defendants failed to provide Plaintiff with the consumer rights information required under the statute, and that Defendants failed to provide a notice of cancellation containing information required under §2186. (Amended Complaint, ¶ 52). In addition, Plaintiff avers that Defendants violated 73 P.S. §2183 by charging or receiving from Plaintiff money or other valuable consideration for performing its credit repair service prior to fully performing the service, and by making untrue or misleading representations regarding its credit repair services, including the service to be provided, the period in which those services would provided and their cost. (Amended Complaint, ¶ 52). The Amended Complaint also alleges that Defendants failed to provide a copy of the contract for services, the information sheet

10

required under the CSA and any other documents she signed on November 21, 2009.  (Amended Complaint, ¶ 52).

Moreover, as stated above, Plaintiff has alleged enough factual allegations to support the conclusion that the credit repair services were part of the lease agreement.  Specifically, Plaintiff contends that Defendant DriveHere.com advertised that they had a team of experts who help each customer improve their credit score as part of their leasing business and lease transaction with Plaintiff, the lease transaction and credit repair were accomplished in the same day at the same physical location, and that each Defendant received consideration in connection with Plaintiff's lease transaction. (Amended Complaint, ¶s 29, 34, 35).  For these reasons, we also deny the motion to dismiss Count II of the Amended Complaint.

### 3. *Federal Consumer Leasing Act- Count III*

#### A. Background of the Consumer Leasing Act

In response to an emerging trend toward automobile leasing, congress passed the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667f as Chapter 5 of the Truth in Lending Act ("TILA'), 15 U.S.C §1601, *et. seq*. Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214, 217 (3d Cir. 2000).  The CLA was promulgated "to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms

available to him, limit balloon payments in consumer leasing,
[and] enable comparison of lease terms with credit terms in
advertisements." 12 U.S.C. § 1601(b).  The Federal Reserve Board
has the authority to issue rules implementing the CLA and they
enacted "Regulation M," 12 C.F.R. § 213 *et seq*, which requires
that lessors' disclosures "be made clearly, conspicuously, in
meaningful sequence, and in accordance with the further
requirements of this section."  Applebaum, 226 F.3d at 218.
Additionally, the CLA should be construed liberally in favor of
the consumer.  See, Rossman v. Fleet Bank, 280 F.3d 384, 390 (3d
Cir 2002); Carmichael v. Nissan Motor Acceptance Corp., 291 F.3d
1278, 1280 (11th Cir 2002).

     *B. Listed Total Payment Charge*

15 U.S.C. § 1667a(9) states that a lease must contain "[T]he
number, amount, and due dates or periods of payments under the
lease and the total amount of such periodic payments."  And,
under 12 C.F.R. § 213.4(e) governing the content of required
disclosures,

> For any consumer lease subject to this part, the lessor
> shall disclose the following information, as applicable:
>
> > (e)  The total of payments, with a description such as
> > "the amount you will have paid by the end of the
> > lease." This amount is the sum of the amount due at
> > lease signing (less any refundable amounts), the total
> > amount of periodic payments (less any portion of the
> > periodic payment paid at lease signing), and other
> > charges under paragraphs (b), (c), and (d) of this
> > section. In an open-end lease, a description such as
> > "you will owe an additional amount if the actual value

of the vehicle is less than the residual value" shall accompany the disclosure.

Here, Plaintiff asserts that Peoples Commerce, Inc. and DriveHere.com did not comply with 12 C.F.R. § 213.4(e) because they only listed the total payment as $10,075.00, which is the sum of the weekly payment and excludes other charges paid such as the $974.99 due and paid at signing.  Defendants claim that they complied with the statute because they listed the total amount of the periodic payments, as $10,075.00 and that the $974.99 due at signing was clearly listed on the lease.  Therefore, Defendants argue that Plaintiff's claim is "nonsensical" because the amount is clearly listed on the lease.

In reviewing the exhibits attached to and incorporated into the Amended Complaint, it appears that Defendants' lease clearly violates Regulation M, 12 C.F.R. §213.4(e).  Again, Regulation M defines the total payment as "the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section."  See 12 C.F.R. §213.4(e).  By not listing the $974.99 due at signing with the total payment number, it appears that Defendants may have violated the Regulation. Thus, Plaintiff has alleged sufficient facts to withstand a motion to dismiss on this claim as well.

C. *Excess Mileage* Charge

13

Plaintiff's Amended Complaint also alleges that Defendants violated Regulation M because charges for excess wear and mileage must be reasonable and the lease drawn by the defendant requires Plaintiff to pay $0.25 per mile beginning at mile one, which is an unreasonable charge.  Defendants rejoin that they complied with the requirements of Regulation M because the lease clearly lists the amount that would be charged for excess mileage and that Plaintiff's assertion that the charges are unreasonable is baseless because the regulation does not call for the charges to reasonable.

In relevant part, Regulation M provides as follows at 12 C.F.R. §213.4(h)(3):

> In a motor-vehicle lease, a notice regarding wear and use substantially similar to the following: "Excessive Wear and Use. You may be charged for excessive wear based on our standards for normal use." The notice shall also specify the amount or method for determining any charge for excess mileage.

Furthermore, 15 U.S.C. §1667b(a)(governing a lessee's liability upon expiration or termination of a lease) provides in pertinent part: "... the lease may set standards for such wear and  [excessive] use if such standards are not unreasonable."

We thus find Defendants' argument to be incorrect.  Indeed, 15 U.S.C. § 1667b(a) clearly calls for an excessive wear charge to be reasonable.  Plaintiff alleges that a $0.25 charge for each mile in excess of zero miles is unreasonable.  (Amended Complaint, ¶ 71).  Plaintiff argues that charging $0.25 per mile

14

for all mileage incurred over a three-year lease term would
result in a driver with a typical driving pattern owing some
$9,000 in excess mileage charges.  (Amended Complaint, ¶ 71).
Whether such a charge is in fact reasonable is a question of law
for trial.  In the interim, though, we find that Plaintiff has
alleged sufficient facts which, if accepted as true, state a
claim upon which relief may be granted under the Consumer Leasing
Act.

### 4. *Breach of Fiduciary Duty- Count IV*[2]

To establish a breach of fiduciary duty, a plaintiff must
prove that she and the defendants had a confidential
relationship.  <u>Harold v. McGann</u>, 406 F. Supp. 2d 562, 571 (E.D.
Pa. 2005).  The Pennsylvania Supreme Court acknowledged that "the
concept of confidential relationship cannot be reduced to a
catalogue of specific circumstances, invariably falling to the
left or the right of a definitional line." <u>In re Estate of Scott</u>,
455 Pa. 429, 432, 316 A.2d 883, 885 (1974).  "Although no precise
formula has been devised to ascertain the existence of a
confidential relationship, it has been said that such a
relationship is not confined to a particular association of
parties but exists whenever one occupies toward another such a
position of advisor or counselor as reasonably inspire confidence

---

[2] Plaintiff has mistakenly labeled this Count III, however it is in
reality the fourth count in the Amended Complaint.

that he will act in good faith for the other's interest." <u>Silver
v. Silver</u>, 421 Pa. 533, 537, 219 A.2d 659, 662 (Pa. 1966).  <u>See
also</u>, <u>Basile v. H & R Block, Inc.</u>, 2001 Pa. Super. Ct. 136, at
*8, 777 A.2d 95, 101-02 (Pa. Super. 2001).

In addition to a confidential relationship, a plaintiff must
also allege the elements of breach of fiduciary duty.  <u>Baker v.
Family Credit Counseling Corp.</u>, 440 F. Supp. 2d 392, 414 (E.D.
Pa. 2006).  Those elements are: (1) that the defendant
negligently or intentionally failed to act in good faith and
solely for the benefit of plaintiff in all matters for which he
or she was employed; (2) that the plaintiff suffered an injury;
and (3) that the defendant's failure to act solely for the
plaintiff's benefit was a real factor bringing about the
plaintiff's injuries.  <u>McDermott v. Party City Corp.</u>, 11 F. Supp.
2d 612, 626 n. 18 (E.D. Pa. 1998).  <u>See</u> <u>also</u>, <u>Bernhardt v.
Needleman</u>, 705 A.2d 875, 878 (Pa. Super. Ct. 1997); <u>Universal
Premium Acceptance Corp. v. York Bank and Trust Co.</u>, 69 F.3d 695,
704 (3d Cir. 1995) (citing <u>Cenna v. United States</u>, 402 F.2d 168,
170 (3d Cir. 1968)).

Plaintiff argues that Defendant FixCreditPlus.com owes her a
duty to act in good faith in carrying out its duties and to act
in Plaintiff's best interest because she signed a limited Power
of Attorney.  Plaintiff alleges that FixCreditPlus.com
intentionally and/or negligently failed to act in Plaintiff's

16

best interest regarding financial consulting, credit and budget consulting, debt arbitration, creditor negotiation or loan preparation and that FixCreditPlus.com failed to take steps to address derogatory information appearing in Plaintiff's credit reports. (Amended Complaint, ¶s 79-80).  Defendant does not specifically give reason to dismiss this claim, but claims that FixcreditPlus.Com is not referenced in the lease agreement and that FixCreditPlus.Com was not given any consideration for its services.

This Court concludes that Plaintiff has alleged a confidential relationship with FixCreditPlus.com and sufficiently alleged the elements of breach of fiduciary duty.  The crux of this relationship is "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other."  In re Estate of Scott, 455 Pa. 429, 432,  316 A.2d 883, 885 (1974).  Plaintiff alleges that Defendant promised and she trusted defendant to improve and repair her credit history, record and/or rating by, among other things, contacting the credit bureaus to dispute information contained in her credit report. (Amended Complaint, ¶ 80).  With respect to this allegation, Plaintiff points to the fact that she gave Defendant FixCreditPlus.com limited power of attorney to act as her "fiduciary" and the authority to "initiate and effect any communication or correspondence that may be necessary for

17

negotiations or official business dealings with any party in connection with financial consulting, credit and budget counseling, debt arbitration, creditor negotiation, or loan preparation on [her] behalf." Plaintiff alleges that Defendant was required to act at all times solely in Plaintiff's best interest, but instead Defendants harmed her by reporting to the credit bureaus that the car was repossessed. (Amended Complaint, ¶s 77-81). These allegations are sufficient to state a claim for breach of fiduciary duty against defendant FixCreditPlus.com.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies Defendants' Motion to Dismiss. An order follows.